# EXHIBIT A

**Fax**



**Racial Justice Program**
**125 Broad Street**
**18th Floor**
**New York, NY 10004**

| **To:** Federal Bureau of Investigation<br>Attn: FOI/PA Request | **From:** Nusrat Choudhury |
|---|---|
| **Fax:** 212.549.2654 | **Pages:** 14 (including coversheet) |
| **Phone:** 212.519.7876 | **Date:** 10/31/2018 |

**Re:** **Request Under Freedom of Information Act**
**(Expedited Processing & Fee Waiver/Limitation Requested)**








October 30, 2018

*Via Facsimile*

Federal Bureau of Investigation
Attn: FOI/PA Request
Record/Information Dissemination Section
170 Marcel Drive
Winchester, VA 22602-4843
Fax: (540) 868-4391/4997

**Re: <u>Request Under Freedom of Information Act</u>**
**<u>(Expedited Processing & Fee Waiver/Limitation Requested)</u>**

To Whom It May Concern:

The American Civil Liberties Union and the American Civil Liberties Union Foundation (together, the "ACLU")[1] and the Center for Media Justice ("CMJ")[2] submit this Freedom of Information Act request (the "Request") for records regarding the FBI's surveillance of Black people on the basis of a purported shared ideology, including but not limited to records using the FBI's new term "Black Identity Extremists," and older terms like "Black Separatist Extremists," "Black Nationalists," "Black Separatists," and "Black Supremacist Extremists."

## I. Background

On October 6, 2017, *Foreign Policy* published an article disclosing the existence of an FBI Intelligence Assessment titled "Black Identity Extremists Likely Motivated to Target Law

---

[1] The American Civil Liberties Union Foundation is a 501(c)(3) organization that provides legal representation free of charge to individuals and organizations in civil rights and civil liberties cases, educates the public about the civil rights and civil liberties implications of pending and proposed state and federal legislation, provides analyses of pending and proposed legislation, directly lobbies legislators, and mobilizes its members to lobby their legislators. The American Civil Liberties Union is a separate non-profit, 501(c)(4) membership organization that educates the public about the civil liberties implications of pending and proposed state and federal legislation, provides analysis of pending and proposed legislation, directly lobbies legislators, and mobilizes its members to lobby their legislators.

[2] The Center for Media Justice is a nationally recognized organizing hub representing the media policy interests and building the cultural leadership of hundreds of social justice groups across the United States. Its mission is to create media and cultural conditions that strengthen movements for racial justice, economic equity, and human rights.

Enforcement Officers" (the "Assessment").[3] The Assessment was disseminated to 18,000 law enforcement agencies across the country.[4] In the days after it became public, the Assessment garnered substantial public and media attention[5]—and for good reason.

News outlets report that the term "Black Identity Extremists" appears to be "entirely new," and suggest that the FBI created the term to justify surveillance of, and other government action against, Black people, including Black activists.[6] This would add to the long list of terms the FBI has historically used in attempts to group unconnected Black people together for the purpose of conducting surveillance. The Assessment itself notes that it builds from prior bulletins about so-called "Black Separatist Extremists."

Although largely part of a longer history, the term "Black Identity Extremists" is also distinguishable. As noted by U.S. Representative Karen Bass, the "Black Identity Extremists" designation, the label appears to improperly group together any individuals who have a sense of "Black identity,"[7] or, in the FBI's words, "resort to violence or unlawful activities 'in response to perceive[ ] racism and injustice in American society'."[8] But the targeting of people solely because of a belief in "Black identity" or engagement in First Amendment protected activity to counter racism and injustice is unlawful. And the profiling of Black activists on the basis of race and ethnicity is impermissible.

Moreover, the Assessment raises important questions about the FBI's priorities and allocation of resources. It suggests that, at a time when concerns about President Trump's support of white supremacists are growing, the FBI explicitly considers Black activists a

---

[3] Jana Winter & Sharon Weinberger, *The FBI's New U.S. Terrorist Threat: 'Black Identity Extremists,'* Foreign Policy (Oct. 6, 2017), http://foreignpolicy.com/2017/10/06/the-fbi-has-identified-a-new-domestic-terrorist-threat-and-its-black-identity-extremists/.

[4] Kate Irby, *White and Far-Right Extremists Kill More Cops, But FBI Tracks Black Extremists More Closely, Many Worry*, McClatchy (Jan. 25, 2018), https://www.mcclatchydc.com/news/nation-world/national/article196423174.html.

[5] *See, e.g.*, Jonathan Capehart, *Trump's War on the American People*, Washington Post (Oct. 9, 2017), https://www.washingtonpost.com/blogs/post-partisan/wp/2017/10/09/trumps-war-on-the-american-people/?utm_term=.226788dfcfbe; Sam Levin, *FBI Terrorism Unit Says 'Black Identity Extremists' Pose a Violent Threat*, Guardian (Oct. 7, 2017), https://www.theguardian.com/us-news/2017/oct/06/fbi-black-identity-extremists-racial-profiling; Jack Moore, *FBI Says 'Black Identity Extremists' are a Violent Threat Because of their Views on Police Brutality*, Newsweek (Oct. 7, 2017), http://www.newsweek.com/fbi-says-black-identity-extremists-are-violent-threat-because-their-views-680084; Jessica Chia, *FBI Identifies 'Black Identity Extremists' as Threat to Cops*, New York Daily News (Oct. 7, 2017), http://www.nydailynews.com/news/national/fbi-identifies-black-identity-extremists-threat-cops-article-1.3546699.

[6] Winter & Weinberger, *supra* n. 3.

[7] Nicholas Ballasy, *"Total Retraction" of FBI's "Black Identity Extremism" Report "Imperative," says Dem Congresswoman*, PJ Media (Apr. 8, 2018), https://pjmedia.com/news-and-politics/total-retraction-fbis-black-identity-extremism-report-imperative-says-dem-congresswoman/.

[8] Martin De Bourmont, *Is a Court Case in Texas the First Prosecution of a "black Identity Extremist?"*, Foreign Policy (Jan. 20, 2018), https://foreignpolicy.com/2018/01/30/is-a-court-case-in-texas-the-first-prosecution-of-a-black-identity-extremist/.

domestic terrorist threat.[9] It reveals that, although most individuals who shoot and kill officers are white[10] and government reports show that white supremacists were responsible for nearly 75 percent of deadly extremist attacks between 2001 and 2016,[11] the FBI is allocating investigative resources to surveilling Black people on the basis of six incidents. And it shows that, in its investigations, the FBI considers individuals' use of social media, including information about who they associated with, what search terms they used, and what content they liked.[12]

Public concern that law enforcement created and use the "Black Identity Extremist" designation to improperly surveil, investigate, and prosecute Black activists has only mounted since the disclosure of the Assessment. There has been significant public debate as to whether a Texas man, Rakem Balogun, is the first Black activist arrested due to surveillance conducted as a result of the BIE designation. In May 2018, a federal judge in Texas dismissed the indictment charging Balogun with illegal gun ownership and ordered his release after five months of pre-trial detention while the government tried—and ultimately failed—to prosecute him for illegal gun ownership.[13] FBI agents investigating "domestic terrorism" began monitoring Mr. Balogun after he participated in a rally in March 2015 protesting law enforcement and made Facebook posts expressing solidary with a man who allegedly killed police officers in Texas.[14] Mr. Balogun had co-founded two groups committed to opposing police brutality, advocating for the rights of Black gun owners, coordinating meals for the homeless, and providing self-defense classes.[15]

Public concern has also centered around federal, state, and local surveillance of Black activists associated with the Black Lives Matter ("BLM") movement. In August 2018, BLM

---

[9] Levin, *supra* n. 5.

[10] Shaun King, *White Men Killed Most Cops in 2016, Conservatives Silent*, New York Daily News (May 11, 2016), http://www.nydailynews.com/news/national/king-cops-killed-white-men-conservatives-silent-article-1.2632965; Michelle Ye Hee Lee, *Are Black or White Offenders More Likely to Kill Police?*, Washington Post (Jan. 9, 2015), https://www.washingtonpost.com/news/fact-checker/wp/2015/01/09/are-black-or-white-offenders-more-likely-to-kill-police/?utm_term=.1c7a56d6f45d.

[11] *Countering Violent Extremism*, U.S. Government Accountability Office 28–34 (April 2017), http://www.gao.gov/assets/690/683984.pdf; *see also supra* n. 4.

[12] *See supra* n. 5.

[13] Creede Newton, *US Judge Orders Release of 'First Black Identity Extremist,'* Al Jazeera (May 5, 2018), https://www.aljazeera.com/news/2018/05/judge-orders-release-black-identity-extremist-180504115412408.html; *see also* Sam Levin, *Black Activist Jailed for His Facebook Posts Speaks Out About Secret FBI Surveillance*, Guardian (May 11, 2018), https://www.theguardian.com/world/2018/may/11/rakem-balogun-interview-black-identity-extremists-fbi-surveillance?__twitter_impression=true; Nicole Hemmer, *The government prosecution of a "black identity extremist" fell apart. Meanwhile*, Vox (May 19, 2018), https://www.vox.com/the-big-idea/2018/5/18/17368328/black-identity-extremist-fbi-klan-white-supremacy-black-lives-matter-balogun; Colin Kalmbacher, *The FBI Now Apparently Relying on InfoWars For Information to Prosecute Black Activists*, Law & Crime (May 12, 2018), https://lawandcrime.com/race-relations/the-fbi-is-now-apparently-relying-on-infowars-for-information-to-prosecute-black-activists/.

[14] *See Levin*, *supra* note 13.

[15] *Id.* Although federal authorities have not officially designed Mr. Balogun a so-called Black Identity Extremist, media have reported that the prosecution's "language in court resembled the warnings in the" BIE Assessment. *Id.*

activists in Memphis, Tennessee, learned that, in 2016 and 2017, the Memphis Police Department, under the direction of the Department of Homeland Security, used social media platforms to spy on BLM activists.[16] Accessing both public and private Facebook posts, the police tracked BLM activists, their social media contacts, and, in at least once case, an activist's spouse, according to documents recently obtained by the ACLU.[17] Memphis police used this information to prepare "joint intelligence briefs," which were widely shared with the Shelby County sheriff and government officials, the county school district, the Tennessee Department of Homeland Security, the U.S. Department of Homeland Security, the U.S. Department of Justice, the U.S. Military, the Memphis municipal utility company, the regional utility company, and private companies, such as FedEx and Autozone.[18]

Members of Congress have even voiced their concern about the probability that the government is spying on Black activists under the Assessment's guidance. In November 2017, shortly after disclosure of the FBI's "Black Identity Extremists" Assessment, Congressional Black Caucus Chairman Cedric Richmond condemned the Trump Administration for spying on Black Americans and labeling a threat to the nation.[19] In March 2018, legislators convened a hearing to discuss the designation, at which Representative Bass expressed concern that "Black Identity Extremists" could be applied to "all protesters" demonstrating for an end to police violence against Black people.[20] She also noted that the Assessment conflated "unconnected things" in order to arrive at its conclusion and demanded a "total retraction" of the report.[21] The Congressional Black Caucus, both in a private meeting and during public testimony, has asked FBI Director Christopher Wray to rescind the report—he has not committed to doing so.[22]

Because of the public interest in the FBI's term "Black Identity Extremists" and more broadly in FBI surveillance of Black people and Black activists, the ACLU and CMJ seek release of the records described below. Through this Request, the ACLU and CMJ aim to facilitate the public's indispensable role in checking the power of our government, including impermissible

---

[16] Sam Fulwood III, *Newly Released Documents Reveal Memphis Police Have been Spying on Black Lives Matter Activists*, ThinkProgress (Aug. 1, 2018), https://thinkprogress.org/memphis-police-spy-on-black-lives-matter-activists-facebook-916e5d188e7c/; *see also* Rashad Robinson, *The Federal Government's Secret War on Black Activists*, American Prospect (April 4, 2018), http://prospect.org/article/federal-governments-secret-war-on-black-activists.

[17] *Id.*

[18] Brentin Mock, *Memphis Police Spying on Activists is Worse Than we Thought*, CityLab (July 27, 2018), https://www.citylab.com/equity/2018/07/memphis-police-spying-on-activists-is-worse-than-we-thought/566264/.

[19] Fulwood, *supra* n. 17.

[20] *U.S. Legislators Worried By FBI Term "Black Identity Extremists,"* Al Jazeera (Mar. 20, 2018), https://www.aljazeera.com/news/2018/03/legislators-worried-fbi-term-black-identity-extremist-180320195356667.html.

[21] Ballasy, *supra* n. 7; Lincoln Anthony Blades, *Why the FBI's "Black Identity Extremist" Classification is Dangerous*, Teen Vogue (Apr. 30, 2018), https://www.teenvogue.com/story/why-the-fbis-black-identity-extremist-classification-is-dangerous.

[22] *See supra* n. 4.

profiling of activists on the basis of race, ethnicity, or First Amendment protected speech or activity.

## II. Requested Records

The ACLU and CMJ seek release of:

1. All records created since January 1, 2014, that use any of the following terms or abbreviations in singular or plural form: "Black Identity Extremist" ("BIE"), "Black Nationalist" ("BN"), "Black Separatist" ("BS"), or "Black Supremacist Extremist" ( "BSE");

2. All records referencing, or created in response to, public and Congressional inquiries or reactions to the existence or contents of the FBI Intelligence Assessment titled "Black Identity Extremists Likely Motivated to Target Law Enforcement Officers"; and

3. All records created since January 1, 2014, that reference "extremist" violence committed by Black people in the United States, including but not limited to individuals described as "Black Identity Extremists," "Black Nationalists," "Black Separatists," or "Black Supremacist Extremists."

For the purposes of this Request, "records" are collectively defined to include, but are not limited to: intelligence notes, assessments, Field Analysis Reports, raw intelligence reporting, finished intelligence, bulletins, instructions, directives, guidance documents, formal and informal presentations, training documents, PowerPoints, slide decks, presentation materials, alerts, updates, advisories, reports, legal and policy memoranda, contracts or agreements, minutes or notes of meetings and phone calls, memoranda, legal opinions, evaluations, memorializations, guidelines, e-mails (including e-mails between federal government employees and individuals employed by state and local governments, private companies, and/or non-governmental organizations), attachments to e-mails, and social-media posts.

The FBI has an obligation to search all such field offices that are reasonably expected to produce any relevant information. *See, e.g.*, *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990); *Marks v. U.S. Dep't of Justice*, 578 F.2d 261, 263 (9th Cir. 1978) (agency not required to search all of its field offices because request did not ask for a search beyond the agency's central files); *see also Am. Immigration Council v. U.S. Dep't of Homeland Sec.*, 950 F. Supp. 2d 221, 230 (D.D.C. 2013).

With respect to the form of production, *see* 5 U.S.C. § 552(a)(3)(B), the ACLU and CMJ request that responsive electronic records be provided electronically in their native file format, if possible. Alternatively, the ACLU and CMJ request that the records be provided electronically in a text-searchable, static-image format (PDF), in the best image quality in the agency's possession, and that the records be provided in separate, Bates-stamped files.

## III. Application for Expedited Processing

The ACLU and CMJ request expedited processing pursuant to 5 U.S.C. § 552(a)(6)(E).[23] There is a "compelling need" for these records, as defined in the statute, because the information requested is "urgen[tly]" needed by an organization primarily engaged in disseminating information "to inform the public concerning actual or alleged Federal Government activity." 5 U.S.C. § 552(a)(6)(E)(v)(II).

*A. The ACLU is an organization primarily engaged in disseminating information in order to inform the public about actual or alleged government activity.*

The ACLU is "primarily engaged in disseminating information" within the meaning of the statute. 5 U.S.C. § 552(a)(6)(E)(v)(II).[24] Obtaining information about government activity, analyzing that information, and widely publishing and disseminating that information to the press and public are critical and substantial components of the ACLU's work and are among its primary activities.[25]

The ACLU regularly publishes *STAND*, a print magazine that reports on and analyzes civil liberties-related current events. The magazine is disseminated to over 620,000 people. The ACLU also publishes regular updates and alerts via email to approximately 2.15 million subscribers (both ACLU members and non-members). These updates are additionally broadcast to 1.5 million social media followers (members and non-members). The magazine as well as the email and social-media alerts often include descriptions and analysis of information obtained through FOIA requests.

The ACLU also regularly issues press releases to call attention to documents obtained through FOIA requests, as well as other breaking news,[26] and ACLU attorneys are interviewed

---

[23] *See also* 28 C.F.R. § 16.5(e).

[24] *See also* 28 C.F.R. § 16.5(e)(1)(ii).

[25] *See ACLU v. DOJ*, 321 F. Supp. 2d 24, 29 n.5 (D.D.C. 2004) (finding non-profit public interest group that "gathers information of potential interest to a segment of the public, uses its editorial skills to turn the raw material into a distinct work, and distributes that work to an audience" to be "primarily engaged in disseminating information"). Courts have found that the ACLU as well as other organizations with similar missions that engage in information-dissemination activities similar to the ACLU are "primarily engaged in disseminating information." *See, e.g.*, *Leadership Conference on Civil Rights v. Gonzales*, 404 F. Supp. 2d 246, 260 (D.D.C. 2005); *Elec. Privacy Info. Ctr. v. DOD*, 241 F. Supp. 2d 5, 11 (D.D.C. 2003).

[26] *See, e.g.*, Press Release, American Civil Liberties Union, U.S. Releases Drone Strike 'Playbook' in Response to ACLU Lawsuit (Aug. 6, 2016), https://www.aclu.org/news/us-releases-drone-strike-playbook-response-aclu-lawsuit; Press Release, American Civil Liberties Union, Secret Documents Describe Graphic Abuse and Admit Mistakes (June 14, 2016), https://www.aclu.org/news/cia-releases-dozens-torture-documents-response-aclu-lawsuit; Press Release, American Civil Liberties Union, U.S. Releases Targeted Killing Memo in Response to Long-Running ACLU Lawsuit (June 23, 2014), https://www.aclu.org/national-security/us-releases-targeted-killing-memo-response-long-running-aclu-lawsuit; Press Release, American Civil Liberties Union, Justice Department White Paper Details Rationale for Targeted Killing of Americans (Feb. 4, 2013), https://www.aclu.org/national-security/justice-department-white-paper-details-rationale-targeted-killing-americans; Press Release, American Civil Liberties Union,

frequently for news stories about documents released through ACLU FOIA requests.[27]

Similarly, the ACLU publishes reports about government conduct and civil liberties issues based on its analysis of information derived from various sources, including information obtained from the government through FOIA requests. This material is broadly circulated to the public and widely available to everyone for no cost or, sometimes, for a small fee. ACLU national projects regularly publish and disseminate reports that include a description and analysis of government documents obtained through FOIA requests.[28] The ACLU also regularly publishes books, "know your rights" materials, fact sheets, and educational brochures and pamphlets designed to educate the public about civil liberties issues and government policies that implicate civil rights and liberties.

The ACLU publishes a widely read blog where original editorial content reporting on and analyzing civil rights and civil liberties news is posted daily.[29] The ACLU creates and disseminates original editorial and educational content on civil rights and civil liberties news through multi-media projects, including videos, podcasts, and interactive features.[30] The ACLU also publishes, analyzes, and disseminates information through its heavily visited website, www.aclu.org. The website addresses civil rights and civil liberties issues in depth, provides features on civil rights and civil liberties issues in the news, and contains many thousands of documents relating to the issues on which the ACLU is focused. The ACLU's website also serves as a clearinghouse for news about ACLU cases, as well as analysis about case developments, and an archive of case-related documents. Through these pages, and with respect to each specific civil liberties issue, the ACLU provides the public with educational material,

---

Documents Show FBI Monitored Bay Area Occupy Movement (Sept. 14, 2012), https://www.aclu.org/news/documents-show-fbi-monitored-bay-area-occupy-movement-insidebayareacom.

[27] *See, e.g.*, Karen DeYoung, *Newly Declassified Document Sheds Light on How President Approves Drone Strikes*, Wash. Post, Aug. 6, 2016, http://wapo.st/2jy62cW (quoting former ACLU deputy legal director Jameel Jaffer); Catherine Thorbecke, *What Newly Released CIA Documents Reveal About 'Torture' in Its Former Detention Program,* ABC, June 15, 2016, http://abcn.ws/2jy40d3 (quoting ACLU staff attorney Dror Ladin); Nicky Woolf, *US Marshals Spent $10M on Equipment for Warrantless Stingray Device*, Guardian, Mar. 17, 2016, https://www.theguardian.com/world/2016/mar/17/us-marshals-stingray-surveillance-airborne (quoting ACLU attorney Nate Wessler); David Welna, *Government Suspected of Wanting CIA Torture Report to Remain Secret*, NPR, Dec. 9, 2015, http://n.pr/2jy2p71 (quoting ACLU project director Hina Shamsi).

[28] *See, e.g.*, ACLU, ACLU-Obtained Emails Prove that the Federal Bureau of Prisons Covered Up Its Visit to the CIA's Torture Site (Nov. 22, 2016, 3:15 PM), https://www.aclu.org/blog/speak-freely/aclu-obtained-emails-prove-federal-bureau-prisons-covered-its-visit-cias-torture; ACLU, Details Abound in Drone 'Playbook' – Except for the Ones That Really Matter Most (Aug. 8, 2016, 5:30 PM), https://www.aclu.org/blog/speak-freely/details-abound-drone-playbook-except-ones-really-matter-most; ACLU, ACLU- Obtained Documents Reveal Breadth of Secretive Stingray Use in Florida (Feb. 22, 2015, 5:30 PM), https://www.aclu.org/blog/free-future/aclu-obtained-documents-reveal-breadth-secretive-stingray-use-florida; ACLU, New NSA Documents Shine More Light into Black Box of Executive Order 12333 (Oct. 30, 2014, 3:29 PM), https://www.aclu.org/blog/new-nsa-documents-shine-more-light-black-box-executive-order-12333; ACLU, ACLU Eye on the FBI: Documents Reveal Lack of Privacy Safeguards and Guidance in Government's "Suspicious Activity Report" Systems (Oct. 29, 2013), https://www.aclu.org/sites/default/files/assets/eye_on_fbi_-_sars.pdf.

[29] *See* https://www.aclu.org/blog.

[30] *See* https://www.aclu.org/multimedia.

recent news, analyses of relevant Congressional or executive branch action, government documents obtained through FOIA requests, and further in-depth analytic and educational multi-media features.

The ACLU website includes many features on information obtained through the FOIA.[31] For example, the ACLU's "Predator Drones FOIA" webpage, https://www.aclu.org/national-security/predator-drones-foia, contains commentary about the ACLU's FOIA request, press releases, analysis of the FOIA documents, numerous blog posts on the issue, documents related to litigation over the FOIA request, frequently asked questions about targeted killing, and links to the documents themselves. Similarly, the ACLU maintains an online "Torture Database," a compilation of over 100,000 pages of FOIA documents that allows researchers and the public to conduct sophisticated searches of FOIA documents relating to government policies on rendition, detention, and interrogation.[32]

The ACLU has also published a number of charts and explanatory materials that collect, summarize, and analyze information it has obtained through the FOIA. For example, through compilation and analysis of information gathered from various sources—including information obtained from the government through FOIA requests—the ACLU created a website titled "Mapping the FBI," which provides the public and news media with information about the FBI's investigative and intelligence collection activities.[33] Similarly, the ACLU has used information gathered through FOIA requests to build an original chart that provides the public and news media with a comprehensive summary index of Bush-era Office of Legal Counsel memos relating to interrogation, detention, rendition, and surveillance.[34] And the ACLU produced a summary of documents released in response to a FOIA request related to the FISA Amendments

---

[31] *See, e.g.*, ACLU, *FBI Releases Details of 'Zero-Day' Exploit Decisionmaking Process* (June 26, 2015, 11:00 AM), https://www.aclu.org/blog/free-future/fbi-releases-details-zero-day-exploit-decisionmaking-process; ACLU, *FBI Documents Reveal New Information on Baltimore Surveillance Flights* (Oct. 30, 2015, 8:00 AM), https://www.aclu.org/blog/free-future/fbi-documents-reveal-new-information-baltimore-surveillance-flights; *ACLU v. DOJ—FOIA Case For Records Relating To Killing Of Three U.S. Citizens*, ACLU (last updated Dec. 30, 2016), https://www.aclu.org/national-security/anwar-al-awlaki-foia-request; *ACLU v. Department of Defense*, ACLU (last updated Aug. 18, 2015), https://www.aclu.org/cases/aclu-v-department-defense; *Mapping the FBI*, ACLU (last visited Oct. 17, 2017), https://www.aclu.org/mappingthefbi; *Bagram FOIA*, ACLU (last updated Apr. 18, 2013), https://www.aclu.org/cases/bagram-foia; *CRST FOIA*, ACLU (last visited Oct. 17, 2017), https://www.aclu.org/national-security/csrt-foia; *ACLU V. DOJ—Lawsuit To Enforce NSA Warrantless Surveillance FOIA Request*, ACLU (last visited Oct. 17, 2017), http://www.aclu.org/safefree/nsaspying/30022res20060207.html; *PATRIOT FOIA*, ACLU (last visited Oct. 17, 2017), https://www.aclu.org/patriot-foia; *NSL Documents Released By DOD*, ACLU (last visited Oct. 17, 2017), https://www.aclu.org/nsl-documents-released-dod?redirect=cpredirect/32088.

[32] The Torture Database, https://www.thetorturedatabase.org (last visited Oct. 17, 2017); *see also* Targeted Killing FOIA Database, ACLU (last visited Oct. 17, 2017), https://www.aclu.org/foia-collection/targeted-killing-foia-database.

[33] *Mapping the FBI*, ACLU (last visited Oct. 17, 2017), https://www.aclu.org/issues/national-security/privacy-and-surveillance/mapping-fbi-0.

[34] *Index of Bush-Era OLC Memoranda Relating to Interrogation, Detention, Rendition and/or Surveillance*, ACLU (last visited Oct. 17, 2017), https://www.aclu.org/sites/default/files/pdfs/safefree/olcmemos_2009_0305.pdf.

Act[35]; a chart of original statistics about the Defense Department's use of National Security Letters based on its own analysis of records obtained through FOIA requests[36]; and an analysis of documents obtained through FOIA requests about FBI surveillance flights over Baltimore.[37]

The ACLU plans to analyze, publish, and disseminate to the public the information gathered through this Request. The records requested are not sought for commercial use and the requesters plan to disseminate the information disclosed as a result of this Request to the public at no cost.

*B. CMJ is an organization primarily engaged in disseminating information in order to inform the public about actual or alleged government activity.*

CMJ is also "primarily engaged in disseminating information" within the meaning of the statute. 5 U.S.C. § 552(a)(6)(E)(v)(II).[38] CMJ is a nationally recognized organizing hub representing the media policy interests and building the cultural leadership of hundreds of social justice groups across the United States. CMJ includes a network of nearly 100 affiliates, over 75% of which are local, regional, or statewide social justice organizations based in under-represented communities, comprising the largest racial justice network for media rights, access, and representation in the United States. Its mission is to create media and cultural conditions that strengthen movements for racial justice, economic equity, and human rights.

CMJ has a focus on government surveillance of communities of color, particularly the unequal and historic surveillance of Black people, Muslims, migrants, and the social movements that represent them.[39] CMJ disseminates information on this topic, and others, through publishing its blog, the CultureSHIFT Report[40]; publishing reports, such as *Digital Discrimination: Big Data, Surveillance, & Racial Justice*[41]; and organizing events, including virtual town halls, such as "We Are The Color Of Freedom: Resisting Racist Police Surveillance in a Trump Era,"[42] and participating in conferences, such as the annual "Color of Surveillance"

---

[35] Summary Of FISA Amendments Act FOIA Documents Released on November 29, 2010, ACLU (last visited Oct. 17, 2017), https://www.aclu.org/files/pdfs/natsec/faafoia20101129/20101129Summary.pdf.

[36] Statistics on NSLs Produced by Department of Defense, ACLU (last visited Oct. 17, 2017), https://www.aclu.org/sites/default/files/field_document/nsl_stats.pdf.

[37] ACLU, *FBI Documents Reveal New Information on Baltimore Surveillance Flights* (Oct. 30, 2015, 8:00 AM), https://www.aclu.org/blog/free-future/fbi-documents-reveal-new-information-baltimore-surveillance-flights.

[38] *See also* 28 C.F.R. § 16.5(e)(1)(ii).

[39] *High-Tech Surveillance*, The Ctr. for Media Just. (last visited Oct. 17, 2017), http://mag-net.org/issues/high-tech-surveillance/.

[40] *The CultureSHIFT Report*, The Ctr. for Media Just. (last visited Oct. 17, 2017), http://centerformediajustice.org/blog/.

[41] Digital Discrimination: Big Data, Surveillance, & Racial Justice (Apr. 28–May 1, 2014), http://centerformediajustice.org/wp-content/uploads/2014/10/2014-KE-Report-Digital-Discrimination1.pdf.

conference.[43] CMJ representatives are also interviewed for news stories about these issues, such as Executive Director Malkia Cyril's recent appearance on a national news program to discuss the Assessment.[44] Through these activities, CMJ "gathers information of potential interest to a segment of the public, uses its editorial skills to turn the raw material into a distinct work, and distributes that work to an audience."[45]

CMJ also plans to analyze, publish, and disseminate to the public the information gathered through this Request. The records requested are not sought for commercial use and the requesters plan to disseminate the information disclosed as a result of this Request to the public at no cost.

*C. The records sought are urgently needed to inform the public about actual or alleged government activity.*

These records are urgently needed to inform the public about actual or alleged government activity. *See* 5 U.S.C. § 552(a)(6)(E)(v)(II).[46] Specifically, as discussed in Part I, *supra*, release of the requested records would inform the public about the FBI's domestic surveillance, investigations, and priorities, as well as any impermissible racial profiling.

Given the foregoing, the ACLU and CMJ have satisfied the requirements for expedited processing of this Request.

## IV. Application for Waiver or Limitation of Fees

The ACLU and CMJ request a waiver of document search, review, and duplication fees on the grounds that disclosure of the requested records is in the public interest and because disclosure is "likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester." 5 U.S.C. § 552(a)(4)(A)(iii).[47] The ACLU and CMJ also request a waiver of search fees on the

---

[42] We are the Color of Freedom: Resisting Racist Police Surveillance in a Trump Era Resource Guide, The Ctr. for Media Just. (last visited Oct. 17, 2017), http://centerformediajustice.org/wp-content/uploads/2017/08/resisting-racist-police-surveillance-resource-guide.pdf.

[43] *Color of Surveillance Conference Highlights Monitoring of Immigrant Communities*, Voices for Internet Freedom (June 26, 2017), https://www.internetvoices.org/blog/2017/06/26/color-surveillance-conference-highlights-monitoring-immigrant-communities.

[44] *See, e.g., COINTELPRO 2? FBI Targets "Black Identity Extremists" Despite Surge in White Supremacist Violence*, Democracy Now! (Oct. 17, 2017), https://www.democracynow.org/2017/10/16/cointelpro_2_fbi_targets_black_identity.

[45] *See ACLU*, 321 F. Supp. 2d at 29 n.5.

[46] *See also* 28 C.F.R. § 16.5(e)(1)(ii).

[47] *See also* 28 C.F.R. § 16.10(k)(2).

grounds that the ACLU and CMJ each qualify as a "representative of the news media" and the records are not sought for commercial use. 5 U.S.C. § 552(a)(4)(A)(ii)(II).[48]

*A. The Request is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the ACLU or CMJ.*

As discussed above, news accounts underscore the substantial public interest in the records sought through this Request. Given the ongoing and widespread media attention to this issue, the records sought will significantly contribute to public understanding of the FBI's surveillance and investigations of Black activists on the basis of a purported shared ideology—an issue of profound public importance.

Neither the ACLU nor CMJ is filing this Request to further its commercial interest. As described above, any information disclosed by the ACLU or CMJ as a result of this FOIA Request will be available to the public at no cost. Thus, a fee waiver would fulfill Congress's legislative intent in amending the FOIA. *See Judicial Watch, Inc. v. Rossotti*, 326 F.3d 1309, 1312 (D.C. Cir. 2003) ("Congress amended FOIA to ensure that it be liberally construed in favor of waivers for noncommercial requesters." (quotation marks omitted)).

*B. The ACLU and CMJ are representatives of the news media and the records are not sought for commercial use.*

The ACLU and CMJ also request a waiver of search fees on the grounds that both the ACLU and CMJ qualify as a "representative of the news media" and the records are not sought for commercial use. 5 U.S.C. § 552(a)(4)(A)(ii)(II).

The ACLU and CMJ each meet the statutory and regulatory definitions of a "representative of the news media" because each is an "entity that gathers information of potential interest to a segment of the public, uses its editorial skills to turn the raw materials into a distinct work, and distributes that work to an audience." 5 U.S.C. § 552(a)(4)(A)(ii)(III);[49] *see also Nat'l Sec. Archive v. DOD*, 880 F.2d 1381, 1387 (D.C. Cir. 1989) (finding that an organization that gathers information, exercises editorial discretion in selecting and organizing documents, "devises indices and finding aids," and "distributes the resulting work to the public" is a "representative of the news media" for purposes of the FOIA); *Serv. Women's Action Network v. DOD*, 888 F. Supp. 2d 282 (D. Conn. 2012) (requesters, including ACLU, were representatives of the news media and thus qualified for fee waivers for FOIA requests to the Department of Defense and Department of Veterans Affairs); *ACLU of Wash. v. DOJ*, No. C09–0642RSL, 2011 WL 887731, at *10 (W.D. Wash. Mar. 10, 2011) (finding that the ACLU of Washington is an entity that "gathers information of potential interest to a segment of the public, uses its editorial skills to turn the raw materials into a distinct work, and distributes that work to an audience"); *ACLU*, 321 F. Supp. 2d at 30 n.5 (finding non-profit public interest group to be

---

[48] *See also id.*

[49] *See also* 28 C.F.R. § 16.10(b)(6).

"primarily engaged in disseminating information"). The ACLU and CMJ are each therefore a "representative of the news media" for the same reasons they are "primarily engaged in the dissemination of information."

Furthermore, courts have found other organizations whose mission, function, publishing, and public education activities are similar in kind to the ACLU's and CMJ's to be "representatives of the news media," even though they engage in litigation and lobbying activities beyond their dissemination of information / public education activities. *See, e.g.*, *Elec. Privacy Info. Ctr.*, 241 F. Supp. 2d at 5, 10–15 (finding non-profit public interest group that disseminated an electronic newsletter and published books was a "representative of the news media" for purposes of the FOIA); *see also Nat'l Sec. Archive*, 880 F.2d at 1387; *Judicial Watch, Inc. v. DOJ*, 133 F. Supp. 2d 52, 53–54 (D.D.C. 2000) (finding Judicial Watch, self-described as a "public interest law firm," a news media requester); *cf. Leadership Conference on Civil Rights*, 404 F. Supp. 2d at 260.

On account of these factors, fees associated with responding to FOIA requests are regularly waived for the ACLU as a "representative of the news media."[50] As was true in those instances, the ACLU, as well as CMJ, each meets the requirements for a fee waiver here.

* * *

Pursuant to applicable statutes and regulations, the ACLU and CMJ expect a determination regarding expedited processing within 10 days. *See* 5 U.S.C. § 552(a)(6)(E)(ii); 28 C.F.R. § 16.5(e)(4).

If the Request is denied in whole or in part, the ACLU and CMJ ask that you justify all deletions by reference to specific exemptions to the FOIA. The ACLU and CMJ expect the

[50] In May 2016, the FBI granted a fee-waiver request regarding a FOIA request submitted to the DOJ for documents related to Countering Violent Extremism Programs. In April 2013, the National Security Division of the DOJ granted a fee-waiver request with respect to a request for documents relating to the FISA Amendments Act. Also in April 2013, the DOJ granted a fee-waiver request regarding a FOIA request for documents related to "national security letters" issued under the Electronic Communications Privacy Act. In August 2013, the FBI granted the fee-waiver request related to the same FOIA request issued to the DOJ. In June 2011, the DOJ National Security Division granted a fee waiver to the ACLU with respect to a request for documents relating to the interpretation and implementation of a section of the PATRIOT Act. In March 2009, the State Department granted a fee waiver to the ACLU with regard to a FOIA request for documents relating to the detention, interrogation, treatment, or prosecution of suspected terrorists. Likewise, in December 2008, the DOJ granted the ACLU a fee waiver with respect to the same request. In November 2006, the Department of Health and Human Services granted a fee waiver to the ACLU with regard to a FOIA request. In May 2005, the U.S. Department of Commerce granted a fee waiver to the ACLU with respect to its request for information regarding the radio-frequency identification chips in United States passports. In March 2005, the Department of State granted a fee waiver to the ACLU on a request regarding the use of immigration laws to exclude prominent non-citizen scholars and intellectuals from the country because of their political views, statements, or associations. In addition, the Department of Defense did not charge the ACLU fees associated with FOIA requests submitted by the ACLU in April 2007, June 2006, February 2006, and October 2003. The DOJ did not charge the ACLU fees associated with FOIA requests submitted by the ACLU in November 2007, December 2005, and December 2004. Finally, three separate agencies—the Federal Bureau of Investigation, the Office of Intelligence Policy and Review, and the DOJ Office of Information and Privacy—did not charge the ACLU fees associated with a FOIA request submitted by the ACLU in August 2002.

release of all segregable portions of otherwise exempt material. *See* 5 U.S.C. § 552(b). The ACLU and CMJ reserve the right to appeal a decision to withhold any information or deny a waiver of fees.

Thank you for your prompt attention to this matter. Please furnish the applicable records to:

Nusrat Choudhury
Deputy Director
Racial Justice Program
American Civil Liberties Union
125 Broad Street—18th Floor
New York, New York 10004
T: (212) 519-7876
F: (212) 549-2654
nchoudhury@aclu.org

I affirm that the information provided supporting the request for expedited processing is true and correct to the best of my knowledge and belief. *See* 5 U.S.C. § 552(a)(6)(E)(vi).

Respectfully,

/s Nusrat J. Choudhury

Nusrat J. Choudhury
Deputy Director
Joshua David Riegel
Racial Justice Program
American Civil Liberties Union Foundation
125 Broad Street—18th Floor
New York, New York 10004

Hugh Handeyside
Asma Peracha
National Security Project
American Civil Liberties Union Foundation
125 Broad Street—18th Floor
New York, New York 10004

Steven Renderos
Organizing Director
Center for Media Justice
436 14th Street Suite 500
Oakland, CA 94612

# Xerox Color C60

## Job History Report

Date & Time : 10/31/2018 3:02 PM

Page : 1(Last Page)

| Date | Time | Input Source | Output Destination | Job Information | Page Information | Pages | Sheets | Job Status |
|---|---|---|---|---|---|---|---|---|
| 10/31/2018 | 2:27:59 PM | Scanner | Send Fax | File 7664 | | | | Completed |
| 10/31/2018 | 2:27:57 PM | Folder | Super G3:915408684391:540 868 4391 | File 7664 | | | | Completed |