Abre' Leann Conner (SBN 306024)
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF NORTHERN
CALIFORNIA, INC.
39 Drumm Street
San Francisco, California 94111
T: (415) 621-2493
F: (415) 255-8437
*aconner@aclunc.org*

Mark J. Carter
Nusrat J. Choudhury
Hugh Handeyside
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
125 Broad Street—18th Floor
New York, New York 10004
T: (212) 549-2500
F: (212) 549-2654
*nchoudhury@aclu.org*
*mcarter@aclu.org*
*hhandeyside@aclu.org*

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO-OAKLAND DIVISION

CENTER FOR MEDIA JUSTICE *et al.*;

                        *Plaintiffs*,

v.

FEDERAL BUREAU OF INVESTIGATION *et al.*;

                        *Defendants*.

Case No.  4:19-cv-01465 (DMR)

**PLAINTIFFS' STATEMENT RELATING TO DEFENDANTS' PROCESSING OF RESPONSIVE DOCUMENTS AND [PROPOSED] ORDER REGARDING PROCESSING SCHEDULE**

      This case concerns two requests under the Freedom of Information Act ("FOIA") for records relating to Defendant Federal Bureau of Investigation's ("FBI") Intelligence Assessment concerning so-called "Black Identity Extremists Likely Motivated to Target Law Enforcement Officers" ("Assessment").  Plaintiffs submit this letter in response to the Court's November 20, 2019 Civil Conference Minute Order (ECF No. 58), in which the Court ordered the parties to jointly propose a schedule for processing potentially responsive information or, in the alternative,

to provide separate proposals supported by legal authority.

Defendants indicated in the parties' November 13, 2019 Joint Case Management Statement that the searches for records agreed upon by the parties have led to the identification of more than 20,000 pages of potentially responsive information.  (ECF No. 56).  Today, more than one month later, Defendants informed Plaintiffs that the approximately 20,000 potentially responsive pages have been reduced to 12,700 potentially responsive pages after "scoping out of non-responsive materials from the e-mail searches."  Email from Emmet Ong to Mark Carter, Dec. 13, 2019, attached as Appendix A.  But Defendants also informed Plaintiffs today that "there may be as much as *one million pages* of additional materials that may be technically responsive to the request" and that this is a "very rough estimate."  *Id.* (emphasis added).  Nevertheless, Defendants have taken the position that they will process only 500 pages per month to determine what information to disclose or withhold under exemptions to the FOIA.[1]

Defendants' recent shift in identifying a dramatically higher number of potentially responsive records has made it difficult for Plaintiffs to negotiate a reasonable processing schedule.  Nevertheless, even at the more modest estimate of approximately 12,700 pages, processing would not be complete until January 2022—more than *three years* after submission of the first FOIA request that is the subject of this litigation.  The requested information, however, is urgently needed to inform an ongoing public debate about the creation of the Assessment, its continued use, and the resulting improper FBI targeting of Black activists and Black-led organizations.  In light of the time-sensitive need for this information, Plaintiffs propose a processing schedule of 5,000 pages per month for the 12,700 records identified to date. This schedule is supported by caselaw that underscores the importance of ensuring that requested

---

[1] To date, the FBI has processed less than 3,000 pages—705 pages prior to the filing of this litigation in March 2019 and 2,181 pages since the filing of this lawsuit.

PLAINTIFFS' STATEMENT RELATING TO DEFENDANTS' PROCESSING OF RESPONSIVE DOCUMENTS
CASE NO. 4:19-cv-01465 (DMR)

1  records concerning issues of national importance are disclosed in a timely manner so as to

2  inform ongoing public discussion and debate.

3       Plaintiffs proposed processing schedule does not address the records encompassed by

4  Defendants' recent statement that there "may be as much as one million pages of additional

5  materials that may be technically responsive to the request."  Appendix A.  Plaintiffs request the

6  Court require Defendants to confirm, once again, that all agreed upon searches have been

7  completed and to identify the precise number of additional potentially responsive records no later

8  than December 20, 2019 so as to permit negotiation of a processing schedule for those

9  documents.

10

11       **I.     Factual Background**

12       Plaintiffs MediaJustice and the ACLU[2] submitted a request in October 2018 under the

13  FOIA for records concerning the creation of the Assessment, related policy and training

14  materials, and other threat labels used to target Black people. Plaintiffs submitted another request

15  in June 2019, substantively identical to the October 2018 request, limited to records created

16  between April 19, 2019 and June 19, 2019 (collectively referred to as "the Requests").  Plaintiffs

17  sought expedited processing of the Requests due to the urgent need for the requested

18  information.  Since the Assessment was leaked in August 2017, there has been a vigorous and

19  ongoing public debate about how and why the FBI determined that there is a group of so-called

20  "Black Identity Extremists" ("BIE") that purportedly pose a threat to law enforcement and

21  whether this label is being used to improperly target Black people based on their race and First

22  Amendment protected activity.[3]  The Requests seek government records to inform this public

23

24

25  _____

26  [2] The "ACLU" refers to Plaintiffs American Civil Liberties Union Foundation and the American
    Civil Liberties Union.

27  [3] *See, e.g.,* Jonathan Capehart, *Trump's War on the American People*, Washington Post (Oct. 9,
    2017), https://www.washingtonpost.com/blogs/post-partisan/wp/2017/10/09/trumps-war-on-the-

28

-3-

debate, which has involved serious and ongoing condemnation of the Assessment by Black

activists, members of Congress, the media, advocacy organizations, and even some current and

former law enforcement.[4]

Plaintiffs filed this lawsuit in March 2019 to enforce Plaintiffs' right to the prompt

release of records about the Assessment and related FBI targeting of Black people and Black-led

organizations.  *See* ECF No. 1.  It has now been more than nine months, yet Defendants have

processed less than 3,000 pages of potentially responsive information, leading to the disclosure

of only 816 highly redacted pages.  During this time, members of the public, media, and

Congress have continued to raise concerns that there is no group of so-called "Black Identity

Extremists,"[5] that the Assessment's flawed logic has led, and continues to lead, to unlawful

targeting of Black activists, including people involved in the Black Lives Matter movement,[6] and

that the FBI is spending significant resources on improperly targeting Black activists under the

guise of addressing a non-existent group of Black Identity Extremists at a time when violence by

white supremacists is on the rise.[7]

---

american-people/?utm_term=.226788dfcfbe; Sam Levin, *FBI Terrorism Unit Says 'Black Identity Extremists' Pose a Violent Threat*, Guardian (Oct. 7, 2017), https://www.theguardian.com/us-news/2017/oct/06/fbi-black-identity-extremists-racial-profiling; Jack Moore, *FBI Says 'Black Identity Extremists' are a Violent Threat Because of their Views on Police Brutality*, Newsweek (Oct. 7, 2017), http://www.newsweek.com/fbi-says-black-identity-extremists-are-violent-threat-because-their-views-680084; Jessica Chia, *FBI Identifies 'Black Identity Extremists' as Threat to Cops*, New York Daily News (Oct. 7, 2017), http://www.nydailynews.com/news/national/fbi-identifies-black-identity-extremists-threat-cops-article-1.3546699.

[4] *See* Byron Tau, *FBI Abandons Use of Term 'Black Identity Extremism,'* The Wall Street Journal (July 23, 2019), https://www.wsj.com/articles/fbi-abandons-use-of-terms-black-identity-extremism-11563921355; Press Release, National Organization of Black Law Enforcement Executives, *NOBLE Expresses Concern Over the Black Identity Extremists FBI Assessment* (November 27, 2017), https://noblenational.org/wp-content/uploads/2018/01/FBI-Black-Identity-Extremists-NOBLE-Press-Statement.pdf.

[5] Alice Speri, *Fear of a Black Homeland, The Strange Tale of the FBI's Fictional "Black Identity Extremism" Movement*, The Intercept (March 23, 2019), https://theintercept.com/2019/03/23/black-identity-extremist-fbi-domestic-terrorism/.

[6] *Id.*

[7] *U.S. Legislators Worried By FBI Term "Black Identity Extremists*," Al Jazeera (Mar. 20,

---

-4-

For example, following the filing of this lawsuit, there has been significant public debate about whether a Dallas man, Rakem Balogun, is the first Black individual to be improperly targeted under the BIE label.[8]  Mr. Balogun was detained pre-trial for five months on the charge of possession of a firearm by a prohibited person before the charge was ultimately dropped.[9]  Media extensively covered the case, and members of the public raised concerns that Mr. Balogun was targeted because of his First Amendment-protected beliefs and protest activity based on the flawed logic of the Assessment.[10]

Additionally, members of Congress, the public, and the FBI are engaged in a vigorous national debate about the basis for the Assessment, its implementation, and whether it continues to guide FBI targeting of Black people.[11]  In May 2019, seven members of the Senate Judiciary Committee sent a letter to the FBI after FBI Director Christopher Wray claimed the bureau was grouping threats posed by so-called BIE under a new umbrella label for "Racially Motivated Violent Extremism," stating that the new term "inappropriately combines incidents involving white supremacists and so-called 'Black identity extremists.'"[12]  In June 2019, the House of Representative's Oversight Subcommittee on Civil Rights and Civil Liberties held a hearing in

2018), https://www.aljazeera.com/news/2018/03/legislators-worried-fbi-term-black-identity-extremist-180320195356667.html.
[8] Jacob Vaughn, *Dallas Activist May Be First Labeled 'Black Identity Extremist' by FBI*, Dallas Observer (July 31, 2019), https://www.dallasobserver.com/news/dallas-activist-rakem-balogun-may-be-first-targeted-under-fbis-new-black-identity-extremist-threat-label-11705688.
[9] *Id.*
[10] *Id.*
[11] Byron Tau, *FBI Abandons Use of Term 'Black Identity Extremism,'* The Wall Street Journal (July 23, 2019), https://www.wsj.com/articles/fbi-abandons-use-of-terms-black-identity-extremism-11563921355; Press Release, National Organization of Black Law Enforcement Executives, *NOBLE Expresses Concern Over the Black Identity Extremists FBI Assessment* (November 27, 2017), https://noblenational.org/wp-content/uploads/2018/01/FBI-Black-Identity-Extremists-NOBLE-Press-Statement.pdf.
[12] Letter from Sen. Richard J. Durbin, Sen. Cory Booker, Sen. Sheldon Whitehouse, Sen. Amy Klobuchar, Sen. Christopher A. Coons, Sen. Richard Blumenthal, & Sen. Kamala D. Harris, to William P. Barr, Attorney General, U.S. Department of Justice & Christopher Wray, Director, Federal Bureau of Investigation (May 2, 2019), https://www.durbin.senate.gov/imo/media/doc/Letter%20to%20AG%20Barr%20and%20Director%20Wray%20on%20violent%20white%20supremacist%20threat,%205-2-19.pdf.

which Representative Ayanna Pressley questioned the director of the FBI's Counterterrorism

Division on what she called an "absurd designation."[13]  The FBI Director asserted that the term

"Black Identity Extremists" no longer "exist[s]" and that the FBI has been unable to link a single

killing to Black Lives Matter or other Black activist groups.[14]  Later that month, Representative

Karen Bass further questioned the FBI Director and the Deputy Attorney General about the

origin of the Assessment and whether it was still in use.[15]

    In July 2019, a delegation of Black activists delivered a letter and petition signed by over

100,000 people and twenty-three advocacy organizations to the leadership of three committees of

the U.S. House of Representatives urging "immediate action" to end the targeting of Black

activists under the BIE and similar FBI threat labels.[16]  Later that month, the U.S. Senate

Committee on the Judiciary convened an FBI oversight hearing during which committee

members demanded that the FBI Director confirm whether the bureau truly jettisoned the "Black

Identity Extremist" designation and, if so, to explain why it shifted first to the label "Racially

Motivated Extremism" and later to the label "Racially Motivated Violent Extremism."[17]

    In August 2019, FBI documents leaked to the press revealed for the first time that the FBI

implemented an entire program titled "IRON FIST" to target so-called "Black Identity

---

[13] Hannah Allam, *5 Takeaways About the Trump Administration's Response to Far-Right Extremism*, NPR (June 7, 2019), https://www.npr.org/2019/06/07/730346019/5-takeaways-about-the-trump-administrations-response-to-far-right-extremism.
[14] *Id.*
[15] Press Release, Rep. Karen Bass, Rep. Bass Challenges FBI Director on Fictional BIE Report (Dec. 7, 2017), https://bass.house.gov/media-center/press-releases/rep-bass-challenges-fbi-director-fictional-bie-report.
[16] Press Release, MediaJustice, *Black Activists Meet With Congress to Demand Transparency Around FBI Surveillance* (July 17, 2019), https://mediajustice.org/news/black-activists-meet-with-congress-to-demand-transparency-around-fbi-surveillance/.
[17] Ken Klippenstein, *Leaked FBI Documents Reveal Bureau's Priorities Under Trump*, The Young Turks (Aug. 8, 2019),
https://tyt.com/stories/4vZLCHuQrYE4uKagy0oyMA/mnzAKMpdtiZ7AcYLd5cRR.

-6-

PLAINTIFFS' STATEMENT RELATING TO DEFENDANTS' PROCESSING OF
RESPONSIVE DOCUMENTS
CASE NO. 4:19-cv-01465 (DMR)

Extremists."[18]  Members of the public and Congress have since expressed concern that IRON

FIST remains in place, notwithstanding the FBI's assertion that the BIE label is no longer in

use.[19]  Finally, on October 30, 2019, U.S. House Homeland Security Committee member

Representative Cedric Richmond asked FBI Director Christopher Wray to brief the Committee

about the current status of the BIE designation and IRON FIST.[20]

 The events following the filing of this litigation demonstrate the urgent need for

government records about the Assessment and related policy and investigative records to inform

ongoing public debate about whether the Assessment and related guidelines remain in use,

whether the FBI continues to operate IRON FIST, and whether that program has led, and

continues to lead, to the improper targeting of Black people and Black-led organizations on the

basis of race and First Amendment protected activity.  Moreover, the FBI's apparent shift from

using the BIE threat label to using "Racially Motivated Extremism" and "Racially Motivated

Violent Extremism" as Plaintiffs and the public have waited for the disclosure of information in

response to Plaintiffs' Requests underscores that further delays in disclosure will render the

requested information stale.  Defendants' proposal to process only 500 pages of the 12,700

potentially responsive documents each month thus threatens to render useless Plaintiffs effort to

enforce their right under the FOIA to prompt disclosure of information about government

activity of tremendous importance to the public.

---

[18] *Id.*
[19] Press Release, American Civil Liberties Union, Leaked FBI Documents Raise Concerns about Targeting Black People Under 'Black Identity Extremist' and Newer Labels (August 9, 2019), https://www.aclu.org/press-releases/leaked-fbi-documents-raise-concerns-about-targeting-black-people-under-black-identi-1.
[20] *Global Terrorism: Threats to the Homeland, Part II Before Committee on Homeland Security* 116th Congress (2019), https://homeland.house.gov/activities/hearings/global-terrorism-threats-to-the-homeland-part-ii.

## II.    Legal Authority

In analogous cases where courts have confronted delayed processing schedules that threaten to render useless the information requested under the FOIA, courts have required the FBI to process thousands of pages per month.  Factors relevant to determining the reasonableness of a processing schedule under the FOIA include whether the records concern an issue of national importance, the urgent need for public disclosure of the information, and the delay in disclosure that would be caused through adoption of the government's proposed schedule.  Each of these factors weigh in favor of Plaintiffs' proposed 5,000 pages per month processing schedule here.  The requested information concerns the FBI's improper targeting of Black people and Black-led organizations under the Assessment, which is a topic of significant and ongoing debate amongst members of Congress, the public, and the FBI.

Congress enacted the Freedom of Information Act "to ensure that the Government's activities be opened to the sharp eye of public scrutiny.'" *Favish v. Office of Indep. Counsel*, 217 F.3d 1168, 1171 (9th Cir. 2000) (quoting *United States Dep't of Justice v. Reporters Committee for Freedom of the Press*, 489 U.S. 749, 772–74, (1989)).  As the Ninth Circuit has recognized, "[c]orruption, government inefficiency, and mistrust of public institutions all flourish 'unless the people are permitted to know what their government is up to.'" *Animal Legal Def. Fund v. United States Dep't of Agric.*, 935 F.3d 858, 861 (9th Cir. 2019).  Central to effecting the FOIA's goal of fostering government accountability to the public is ensuring disclosure of information about government conduct in a timely manner.  *See Fiduccia v. U.S. Department of Justice*, 185 F.3d 1035, 1041 (9th Cir. 1999) ("The value of information is partly a function of time."); *Open Soc'y Justice Initiative v. Cent. Intelligence Agency*, 399 F. Supp. 3d 161, 164 (S.D.N.Y. 2019) ("Congress has long recognized that 'information is often useful only if it is timely' . . . ." (quoting H.R. Rep. No. 93-876, at 6271 (1974)).

-8-

The FOIA thus provides a 20-business-day deadline for government agencies to "make a determination" as to the request, which requires notifying requesters "of the scope of the documents that the agency will produce, as well as the scope of the documents that the agency plans to withhold under any FOIA exemptions." *Citizens for Responsibility & Ethics in Washington v. FEC*, 711 F.3d 180, 186 (D.C. Cir. 2013); 5 U.S.C. § 552(a)(6)(A)(i); *see Fiduccia*, 185 F.3d at 1041 ("Congress gave agencies 20 days, not years, to decide whether to comply with requests and notify the requesters . . . ."). This deadline can be extended to 30 days "if unusual circumstances delay the agency's ability to search for, collect, examine, and consult about the responsive documents." *CREW*, 711 F.3d at 188. In this matter, Defendants have entirely failed to meet either statutory deadline for making a timely determination as to the FOIA Requests.

Once the government makes a "determination" as to how to respond to a records request, the "FOIA requires that the agency make the records promptly available." *CREW*, 711 F.3d at 188 (internal quotation marks omitted). Although the agency is permitted "some additional time to physically redact, duplicate, or assemble for production the documents that it has already gathered and decided to produce," the D.C. Circuit has indicated that this additional time would "typically" be "within days or a few weeks of a 'determination,' not months or years." *Id.* at 188. "Unreasonable delays in disclosing non-exempt documents violate the intent and purpose of the FOIA, and the courts have a duty to prevent [such] abuses." *Payne Enters. v. United States*, 837 F.2d 486, 494 (D.C. Cir. 1988). A court "may use its equitable powers to require the agency to process documents according to a court-imposed timeline." *Clemente v. Fed. Bureau of Investigation*, 71 F. Supp. 3d 262, 269 (D.D.C. 2014); *see also Long v. I.R.S.*, 693 F.2d 907, 909 (9th Cir. 1982) ("Congress did not intend to limit the court's exercise of its inherent equitable powers where consistent with the FOIA." (citing *Renegotiation Board v. Bannercraft*

-9-

1   *Clothing Co., Inc.*, 415 U.S. 1, 19 (1974)).

2         Rather than deferring to the FBI's position that it will only process 500 pages per month

3   to determine what information to disclose or redact, federal courts evaluate on a case-by-case

4   basis whether a proposed processing schedule advances the FOIA's goal of prompt disclosure of

5   non-exempt information "to ensure an informed citizenry . . . needed to . . . hold the governors

6   accountable to the governed." *Clemente*, 71 F. Supp. 3d at 268.   Courts consider the following

7   three factors: (1) the public importance of, and need for, the requested records, *see Seavey v.*

8   *Dep't of Justice*, 266 F. Supp. 3d 241, 248 (D.D.C. 2017); (2) whether there is an urgent need for

9   the requested information, *see Clemente*, 71 F. Supp. 3d at 269; and (3) the delay in disclosure of

10  information that would be caused through adoption of the government's proposed schedule, *id.*

11  Each of these three factors weighs in favor of ordering the FBI to process at least 5,000 pages a

12  month in this action.

13        First, Plaintiffs seek records that would shed light on an issue of tremendous national

14  importance: ongoing use of the Assessment and related documents by the FBI and other law

15  enforcement nationwide to target Black people and Black-led organizations on the basis of race

16  and First Amendment-protected activities.  The public interest furthered by a FOIA request is

17  often one of the most important factors considered in determining whether the government is

18  processing information quickly enough to satisfy the FOIA's requirements.  For example, in

19  *Clemente v. Federal Bureau of Investigation*, the court rejected the FBI's proposed schedule of

20  500 pages per month and found a schedule of 5,000 pages per month to be "reasonable in light of

21  the importance of" the requester's work to investigate serious allegations of "corruption in the

22  FBI's handling of its organized crime cases." 71 F. Supp. 3d at 268–69.  This was true even

23  though the court recognized that "the FBI's resources are limited."  *Id.*  Similarly, in *Seavey v.*

24  *Dep't of Justice*, the court rejected the FBI's proposed 500-pages-per-month processing schedule

-10-

1  where the bureau identified over 100,000 documents that were potentially responsive to a

2  professor's request for records to inform a "project designed to explain the role played by the

3  United States Government's intelligence and law enforcement agencies in the movement against

4  our participation in the Vietnam War."  266 F. Supp. 3d 241, 242, 244 (D.D.C. 2017).  Noting

5  that the project was "of substantial substance," the court ordered the FBI to process 2,850 pages

6  a month.  *Id*. at 248.  Additionally, in a case concerning a FOIA request for FBI records about

7  the profiling and surveillance of the Arab American community, a federal court ordered the FBI

8  to process 3,500 pages per month.  *See* Transcript of Proceedings at 7, *Boundaoui v. FBI*,

9  1:2017-cv-04782 (N.D. Ill. Sept. 26, 2017) (ECF No. 43), attached as Appendix B.

10

11       Plaintiffs' FOIA Requests concern an issue of great national importance and thus warrant

12  a dramatically faster processing than the Defendants' proposed 500 pages per month.  The public

13  has a significant and sustained interest in understanding whether the Assessment remains in

14  force, how it is being implemented, and whether the FBI is targeting Black people and Black-led

15  organizations based on race and First Amendment-protected activity.  Since 2017 when a

16  document leaked to the media revealed the FBI was investigating so-called "Black Identity

17  Extremists," advocacy groups, Black activists and members of Congress have demanded more

18  information and an end to the program.[21] After numerous congressional hearings and demands

19  for information by members of Congress, and years of public backlash, the public continues to

20  lack information about FBI policy and conduct needed to inform a national debate about whether

21  the FBI continues to improperly targeted Black activists and Black-led organizations based on

22  the Assessment and related materials.  For example, when Congress confronted the FBI Director

23

24

---

25  [21] *See, e.g.*, *U.S. Legislators Worried by FBI Term "Black Identity Extremists*," Al Jazeera (Mar. 20, 2018), https://www.aljazeera.com/news/2018/03/legislators-worried-fbi-term-black-identity-

26  extremist-180320195356667.html ("Representative Karen Bass of the Congressional Black Caucus said at the hearing on Tuesday the term ['Black Identity Extremists'] could be applied to

27  'all protesters' demonstrating for an end to police violence against black people.").

28

-11-

PLAINTIFFS' STATEMENT RELATING TO DEFENDANTS' PROCESSING OF
RESPONSIVE DOCUMENTS
CASE NO. 4:19-cv-01465 (DMR)

1   on October 30, 2019 with leaked documents showing the FBI's implementation of the IRON

2   FIST program to purportedly "mitigate" the "threat" posed by so-called "Black Identity

3   Extremists" through "enhanced intelligence collection efforts," [22] Director Wray denied

4   knowledge of the program.[23]   Congress continues to request this information from the Director

5   Wray and FBI officials.  *Id.*  The public still has little to no knowledge about the FBI's targeting

6   of Black people and Black-led organizations under the BIE label and similar threat designations,

7   which is precisely the information sought by the Requests.

8           Second, Plaintiffs' Requests seek information about government conduct that is urgently

9   needed.  *See Open Soc'y Justice Initiative v. Cent. Intelligence Agency*, 399 F. Supp. 3d 161, 167

10  (S.D.N.Y. 2019) (ordering a processing schedule of 5,000 pages a month in light of the

11  "paramount public importance and urgency" in FOIA request).  As noted above, in *Clemente*, a

12  forensic analyst sought under the FOIA to obtain government records to "uncover . . . evidence

13  of systemic corruption involving the FBI and its informants associated with organized crime."

14  71 F. Supp. 3d at 264.  The request was time-sensitive because the requester was facing a life-

15  threatening medical condition that potentially limited the time in which she could analyze and

16  disseminate the documents.  *Id.* at 264-65.  The court found the requester's proposed 5,000 pages

17  per month to be "reasonable in light of the importance of her work and the possibility that she

18  may have only a limited time in which to do it." *Id.* at 269.

19          Similarly, in *Boundaoui v. FBI*, a filmmaker requested records about the profiling and

20  surveillance of the Arab American community in a Chicago suburb.  Transcript of Proceedings at

---

[22] *See* Ken Klippenstein, *Leaked FBI Documents Reveal Bureau's Priorities Under Trump*, The Young Turks (Aug. 8, 2019), https://tyt.com/stories/4vZLCHuQrYE4uKagy0oyMA/mnzAKMpdtiZ7AcYLd5cRR.
[23] *See Global Terrorism: Threats to the Homeland, Part II Before Committee on Homeland Security* 116th Congress (2019), https://homeland.house.gov/activities/hearings/global-terrorism-threats-to-the-homeland-part-ii.

7, *Boundaoui v. FBI*, 1:2017-cv-04782 (N.D. Ill. Sept. 26, 2017) (ECF No. 43).  The FBI

identified over 33,000 pages of potentially responsive documents and proposed processing only

500 pages a month, arguing that there was "no current urgency" in the files because "the

investigation was closed ten years ago."  *Id.* at 6.  The court rejected the FBI's characterization

of the requested information as not urgent and ordered the FBI to produce 3,500 pages a month,

noting that "characterize[ing] the public interest as simply a generalized concern over

unwarranted surveillance ignores the specific nature of the surveillance and the targets at issue."

*Id.* at 6-7.

　　　　As in *Clemente* and *Boundaoui*, Plaintiffs' Requests similarly seek time-sensitive records

regarding whether and how the FBI targets so-called "Black Identity Extremists" to inform

public debate about whether Assessment and related FBI policy and guideline materials

promotes racial profiling and the targeting of Black activists for their race and First Amendment-

protected activities.  Plaintiffs have rapidly analyzed and disclosed to the public all records

received in this litigation in an effort to inform public debate.[24] Since Plaintiffs submitted the

original FOIA Request in October 2018, the FBI has asserted that it has shifted away from

targeting "Black Identity Extremists" to focus first on "Racially Motivated Extremism" and now

on "Racially Motived Violent Extremism."[25]  In addition, the public learned through documents

leaked to the media—not FBI disclosures in response to the Plaintiffs' Requests—that the FBI's

is now purportedly targeting "Racially Motivated Violent Extremists" as an umbrella category

---

[24] *See ACLU CMJ Analysis Of Foia Documents on So-Called Black Identity Extremists*, ACLU (March 21, 2019), https://www.aclu.org/fact-sheet/aclu-cmj-analysis-foia-documents-so-called-black-identity-extremists; *see also* Alice Speri, *The FBI Spends a lot of Time Spying on Black Americans*, The Intercept (Oct. 29, 2019), https://theintercept.com/2019/10/29/fbi-surveillance-black-activists/ (discussing documents recently released through Plaintiffs' FOIA Requests).
[25] *See* Byron Tau, *FBI Abandons Use of Term 'Black Identity Extremism'*, Wall Street Journal (July 23, 2019), https://www.wsj.com/articles/fbi-abandons-use-of-terms-black-identity-extremism-11563921355.

-13-

that includes so-called "Black Identity Extremists," as a counterterrorism priority for 2020.[26]

The fact that the FBI has purportedly eschewed the BIE label for other threat designations while this lawsuit has been pending highlights the importance of ensuring that the government produces non-exempt and responsive information at the time the information is relevant to inform public debate.  In *Fiduccia v. U.S. Department of Justice*, the Ninth Circuit reversing a district court decision granting the FBI a two-year stay to produce 1,800 pages of documents, recognized that the "value of information is partly a function of time," noting that "[h]ardly anyone who needs information can anticipate having the same need for it, or use for it, 15 or eight years later." 185 F.3d 1035, 1041 (9th Cir. 1999); *see also Open Soc'y Justice y*, 399 F. Supp. 3d at 164 ("Congress has long recognized that 'information is often useful only if it is timely' and that, therefore 'excessive delay by the agency in its response is often tantamount to denial.'" (quoting H.R. Rep. No. 93-876, at 6271 (1974)). That is abundantly clear here. Additional delay in disclosing the requested records will keep the public in the dark about why the FBI created the Assessment, how it is being used, and whether it is leading to the improper targeting of Black people and Black-led organizations on the basis of race and First Amendment-protected activities. Without the documents that Plaintiffs are statutorily entitled to, the public will lack the information needed to hold the FBI accountable in real time.

Adding to the urgency of the issue is the fact that Black activists, including people who are part of Plaintiff MediaJustice's network, are concerned that the FBI is *currently* surveilling them under the BIE label. The facts surrounding the prosecution and dismissal of charges against a Dallas man, Rakem Balogun, suggests that the FBI may have targeted him as a so-called Black

---

[26] *See Ken Klippenstein, Leaked FBI Documents Reveal Bureau's Priorities Under Trump*, The Young Turks (Aug. 8, 2019), https://tyt.com/stories/4vZLCHuQrYE4uKagy0oyMA/mnzAKMpdtiZ7AcYLd5cRR.

-14-

Identity Extremist.[27] Black activists and Black-led organizations have no way of knowing the breadth of the FBI's improper surveillance of their First Amendment-protected activity, particularly because the FBI, according to leaked documents, is still using Black identity as a basis of investigating domestic terrorism.[28]  The "specific nature of the surveillance and the targets at issue" here warrant a processing schedule of at least 5,000 pages a month. Transcript of Proceedings at 7, *Boundaoui v. FBI*, 1:2017-cv-04782 (N.D. Ill. Sept. 26, 2017) (ECF No. 43).

Third, the FBI's proposed 500-page-per-month processing schedule fails to satisfy the FOIA's requirement of "prompt" disclosure of non-exempt information because it would take more than *three years* from the date of Plaintiffs' first FOIA request to process and disclose records responsive to Plaintiffs' Requests. *See Clemente v*, 71 F. Supp. at 269 (requiring the FBI to process 5,000 pages per month and noting that it has been more than two years since original request in); Transcript of Proceedings at 3, *Boundaoui v. FBI*, 1:2017-cv-04782 (N.D. Ill. Sept. 26, 2017) (ECF No. 43) ("This schedule would mean that production would not end in this case for over five years.").  Because Defendants must process 12,700 potentially responsive pages, following the 500-page-per-month rule will mean that Plaintiffs' will not receive the final disclosure of responsive records until 2022.  The FBI is more than capable of processing more than 500 pages per month, and should be required to do so here.  *See Am. Civil Liberties Union of N. California v. Fed. Bureau of Investigation*, No. 10-CV-03759-RS, 2015 WL 1346680, at *2 (N.D. Cal. Mar. 23, 2015) (noting that the FBI agreed to produce 2,500 pages per month); *Elec. Privacy Info. Ctr. v. F.B.I.*, 933 F. Supp. 2d 42, 48 (D.D.C. 2013) ("[T]he FBI indicated on

---

[27] Jacob Vaughn, *Dallas Activist May Be First Labeled 'Black Identity Extremist' by FBI*, Dallas Observer (July 31, 2019), https://www.dallasobserver.com/news/dallas-activist-rakem-balogun-may-be-first-targeted-under-fbis-new-black-identity-extremist-threat-label-11705688.
[28] Ken Klippenstein, *Leaked FBI Documents Reveal Bureau's Priorities Under Trump*, The Young Turks (Aug. 8, 2019),
https://tyt.com/stories/4vZLCHuQrYE4uKagy0oyMA/mnzAKMpdtiZ7AcYLd5cRR.

1  August 1, 2012, that it anticipated being able to process approximately 5,000 pages per month in

2  another case . . . ." (citing *Lardner v. FBI*, No. 03-874, Status Report, (ECF No. 111) (D.D.C.

3  Aug. 1, 2012)).

4  For the reasons stated above, Plaintiffs believe a schedule by which Defendant processes

5  5,000 pages per month will satisfy the FOIA's requirement of prompt disclosure.

6

7  Dated: December 13, 2019

8                                                                   Respectfully Submitted,

9  Abre' Leann Conner (SBN 306024)
   AMERICAN CIVIL LIBERTIES UNION          */s/ Mark J. Carter*
10 FOUNDATION                              Mark J. Carter
   OF NORTHERN CALIFORNIA, INC.            Nusrat J. Choudhury
11 39 Drumm Street                         Hugh Handeyside
   San Francisco, California 94111         AMERICAN CIVIL LIBERTIES UNION
12 T: (415) 621-2493                       FOUNDATION
   F: (415) 255-8437                       125 Broad Street—18th Floor
13 *aconner@aclunc.org*                    New York, New York 10004
                                           T: (212) 549-2500
14                                         F: (212) 549-2654
                                           *mcarter@aclu.org*
15                                         *nchoudhury@aclu.org*
                                           *hhandeyside@aclu.org*
16

17

18

19

20

21

22

23

24

25

26

27

28
                                           -16-

1
2
3

**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO-OAKLAND DIVISION**

4

CENTER FOR MEDIA JUSTICE *et al.*;

5                          *Plaintiffs*,

Case No.  4:19-cv-01465 (DMR)

6    v.

7

8    FEDERAL BUREAU OF INVESTIGATION *et al.*;

**[PROPOSED] ORDER REGARDING PROCESSING SCHEDULE**

9                          *Defendants*.

10

11

12                          **[PROPOSED] ORDER**

13        It is hereby ordered that Defendants process potentially responsive records at a rate of no less

14    than 5,000 pages per month with monthly rolling productions until Defendants complete their review

15    of all records responsive to Plaintiffs' Freedom of Information Act requests.

16

17    **DATED:** _____            _____

18                                     Hon. Donna M. Ryu
                                       United States Magistrate Judge

19

20

21

22

23

24

25

26

27

28
                                       -17-