# Appendix B

| | |
|---|---|
| 1 | IN THE UNITED STATES DISTRICT COURT |
| | FOR THE NORTHERN DISTRICT OF ILLINOIS |
| 2 | EASTERN DIVISION |

ASSIA BOUNDAOUI,                    )  Docket No. 17 C 4782
                                    )
          Plaintiff,                )  Chicago, Illinois
                                    )  September 26, 2017
     v.                             )  8:45 a.m.
                                    )
FEDERAL BUREAU OF INVESTIGATION     )
and UNITED STATES DEPARTMENT OF     )
JUSTICE,                            )
                                    )
          Defendants.               )

TRANSCRIPT OF PROCEEDINGS - Status
BEFORE THE HONORABLE THOMAS M. DURKIN

APPEARANCES:

For the Plaintiff:     MS. ALEXA POLETTO (via telephone)
                       Sidley Austin LLP
                       787 Seventh Avenue
                       New York, NY 10019

                       MS. CHRISTINA W. ABRAHAM
                       Abraham Law & Consulting LLC
                       161 N. Clark Street
                       Suite 1600
                       Chicago, IL 60601

For the Defendants:    MS. MARCIA K. SOWLES (via telephone)
                       United States Department of Justice
                       Civil Division, Federal Programs Branch
                       20 Massachusetts Avenue, N.W.
                       Washington, D.C. 20530

Also Present:          MS. ASSIA BOUNDAOUI

Court Reporter:        LAURA R. RENKE, CSR, RDR, CRR
                       Official Court Reporter
                       219 S. Dearborn Street, Room 1432
                       Chicago, IL 60604
                       312.435.6053
                       laura_renke@ilnd.uscourts.gov

1          (In open court.)

2          (Clerk places telephone call.)

3               THE CLERK:  Good morning, everyone.  This is Sandy

4     with Judge Durkin.  If you want to hold the line, the judge

5     will be with us momentarily.

6               MS. POLETTO:  Thanks, Sandy.

7               THE CLERK:  Thank you.

8          (Pause in proceedings.)

9               THE CLERK:  All rise.

10              Be seated, please.

11              Okay.  This is 17 C 4782, Boundaoui v. FBI.

12              THE COURT:  All right.  Good morning.  Let's have

13    everyone on the phone identify themselves, then the people in

14    court identify themselves.

15              MS. POLETTO:  Good morning, your Honor.  This is Alexa

16    Poletto for the plaintiff.

17              MS. SOWLES:  This is Marcia Sowles for the defendants.

18    I'm an attorney at the Department of Justice.

19              THE COURT:  All right.

20              MS. ABRAHAM:  Christina Abraham for the plaintiff.

21              MS. BOUNDAOUI:  And this is Assia Boundaoui, the

22    plaintiff.

23              THE COURT:  All right.  Good morning, everyone.

24              MS. BOUNDAOUI:  Good morning.

25              THE COURT:  All right.  Before the Court are two

1   motions, defendant -- defendants FBI and DOJ's motion for an

2   *Open America* stay and plaintiff Assia Boundaoui's motion to

3   compel expedited processing of her Freedom of Information Act

4   request for FBI records concerning the antiterrorism

5   investigation in the Chicago suburbs known as Operation Vulgar

6   Betrayal.

7          Addressing the stay motion first, defendants request a

8   stay of proceedings pursuant to 5 U.S.C. § 552(a)(6)(C) and

9   *Open America v. Watergate Special Prosecution Force*,

10  547 F.2d 605, a D.C. Circuit case, 1976.

11         Instead of complying with FOIA's ordinary 20-day --

12  20-working-day timeline for determining whether to comply with

13  a FOIA request, defendants ask for a stay that would allow them

14  to review and process documents on a 500-page-per-month

15  schedule.  This schedule would mean that production would not

16  end in this case for over five years.

17         FOIA permits an exception to the ordinary timeline

18  only if the government can show exceptional -- quote -- "[i]f

19  the Government can show exceptional circumstances exist and

20  that the agency is exercising due diligence in responding to

21  the request."  That's 5 U.S.C. § 552(a)(6)(C)(i), *accord Open*

22  *America*, 547 F.2d at 616.

23         The Court finds that defendants have not shown either

24  (1) due diligence or (2) exceptional circumstances.

25         As to due diligence, it has been almost a year since

1  plaintiff filed a FOIA request. And defendants have not

2  produced a single record to date. This is not due diligence.

3        In *Government Accounting -- Accountability Project v.*

4  *U.S. Department of Health and Human Services*, 568 F.Supp.2d 55,

5  pages 63 and 64 -- it's a district court -- D.C. District

6  Court, 2008 -- for example, the Court found that an agency

7  failed to demonstrate due diligence based on its poor dealing

8  with plaintiff in particular, including substantial delays in

9  responding to the plaintiff's FOIA request.

10       As to exceptional circumstances, by definition

11 "exceptional circumstances" do not "include a delay that

12 requests from a predictable agency workload of requests under

13 this section, unless the agency demonstrates reasonable

14 progress in reducing its backlog of pending requests." That's

15 5 U.S.C. § 552(a)(6)(C)(ii).

16       But the circumstances set forth in defendants' motion

17 for a stay and David M. Hardy's supporting affidavit -- which

18 is at the record -- record cite 35 -- amount to high volumes of

19 requests and backlog. And rather than showing "reasonable

20 progress in reducing its backlog," defendants note that the

21 backlog is becoming worse. And that's record -- that's the

22 affidavit at paragraph 38. This is predictable, as are the

23 delays that increased requests cause, absent some extraordinary

24 measure defendants would need to take, of which there's no

25 evidence.

1          As the many cases cited in plaintiff's opposition to

2     defendants' stay motion make clear, courts regularly deny *Open*

3     *America* stays in situations like this, finding that a backlog

4     and high volumes of requests are not exceptional circumstances

5     justifying a stay.  Indeed, if these circumstances did qualify

6     as exceptional, then defendants would be in a constant state of

7     "exceptional circumstances" and would never be held accountable

8     to meet FOIA's statutory requirements.

9          Defendants note that the plaintiff's requests require

10    multiple agency reviews and heavy redactions.  But this is the

11    nature of all requests for sensitive documents and is not by

12    itself unexpected.

13         Much of defendants' argument focused on the -- focuses

14    on the unfairness to other FOIA requesters if the plaintiff is

15    given priority through expedited processing.  Unfortunately,

16    the Court can only focus on the fairness -- excuse me.

17    Unfortunately, the Court can only focus on the fairness of

18    defendants' treatment of plaintiff, who made a proper and valid

19    request for documents under the FOIA statute.  The consequences

20    for other requesters of an order expediting processing of

21    plaintiff's request is something the defendants must address

22    internally with regard to their own allocation of resources.

23         So for the foregoing reasons, the Court denies

24    defendants' motion for a stay.

25         Turning to plaintiff's motion, the Court finds that

1   defendants' anticipated five-year timeline for production is

2   patently unreasonable and plaintiff is entitled to expedited

3   processing.

4        Expedited processing is appropriate where (1) there's

5   "[a]n urgency to inform the public about an actual or alleged

6   Federal Government activity" "made by a person who is primarily

7   engaged in disseminating information" -- that's

8   28 CFR § 16.5(e)(1)(ii) -- and/or the request concerns "[a]

9   matter of widespread and exceptional media interest in which

10  there exist possible questions about the government" -- "about

11  the government's integrity that affect public confidence."  And

12  that's also 28 CFR.  That's Section 16.5(e)(1)(iv).

13       Plaintiff is an internationally recognized filmmaker

14  who is producing a film informing the public of the FBI's

15  alleged profiling and surveillance of communities based on

16  race, religion, and ethnicity, in particular, the Arab American

17  community in Bridgeview.  Significant questions about privacy

18  rights are implicated by plaintiff's project.

19       Defendants contend that because the investigation was

20  closed ten years ago, plaintiff's request has no current

21  urgency.  The issues attendant to such an investigation in fact

22  have extraordinary relevance to today's society.  To compare

23  plaintiff's request to the request for information on the

24  investigation of the death of Princess Diana is ludicrous.  And

25  to characterize the public interest as simply a generalized

1    concern over unwarranted surveillance ignores the specific

2    nature of the surveillance and the targets at issue.

3        The Court finds that these circumstances meet the

4    standards for expedited processing.

5        As the cases in plaintiff's motion for expedited

6    processing make clear, courts regularly impose review and

7    production schedules ranging from 1,500 to 10,000 pages per

8    month upon the government in FOIA actions after finding an

9    expedited schedule warranted.

10        Here the Court orders defendants to produce Volumes 1

11   through 5 and 5(a), which is approximately 1,649 pages prior to

12   applicable exemptions, by October 16th, 2017; review all

13   remaining nonexempt documents responsive to plaintiff's

14   September 26, 2016, FOIA request on a rolling basis of

15   3,500 pages per month beginning the month of October 16, 2017,

16   to November 16, 2017; and give priority to the subfiles of

17   individuals for whom plaintiff provides privacy waivers on or

18   before October 16th, 2017.

19        Court further orders that plaintiff pay the required

20   fees on or before October 16, 2017.  Any issue of whether the

21   fees should be waived and thus reimbursed to plaintiff should

22   be addressed on summary judgment.

23        To the extent plaintiff seeks to challenge the FBI's

24   search identifying 33,120 pages of relevant documents involving

25   the Operation Vulgar Betrayal criminal investigation and seeks

1    review of documents beyond those identified documents, the

2    Court finds that issue likewise should be addressed in the

3    context of a motion for summary judgment, and the expedited

4    processing need not include such documents.

5         Finally, defendants contend that being specific in

6    narrowing plaintiff's requests would result in faster

7    processing.  Defendants say there's no index they can provide

8    to plaintiff to help her narrow her request.

9         I can't order the production of an index that does not

10   exist.  But it would seem in the government's best interests to

11   create even a rudimentary index to allow the plaintiff to

12   prioritize, which may lead to a narrowing of the requests and

13   then ultimately decrease the burden on defendants.

14        The parties should provide monthly written status

15   reports reporting on the compliance with this order.  The first

16   report will be due on October 20th, 2017.

17        That's the order of the Court.

18        We will issue a minute order, likely not with all of

19   the justifications I just provided, but to give you the dates

20   and the specifics as to the production requirements so there's

21   no ambiguity.  You don't need to order up the transcript to get

22   that.  That will be in a minute order I'll issue today.

23        Are there any questions?

24     (No response.)

25        THE COURT:  All right.

1       THE CLERK:  Defendant also had a motion --

2       MS. POLETTO:  On behalf of the plaintiff, no, your

3   Honor.  Thank you.

4       THE CLERK:  Defendant had a motion up for relief from

5   MIDP that was filed.  What are you doing with that?

6       THE COURT:  There was --

7       MS. SOWLES:  The -- your Honor, it's not with respect

8   to the -- your order.  But I did have a concern the plaintiff

9   is preparing -- or is submitting privacy waivers.  And I've --

10  and the best method for doing that is actually the old-

11  fashioned method of making hard copies.  And we will get an

12  address that they should be mailed to and can be mailed to

13  overnight.

14      But that's the best because trying to send them

15  electronically or on hard drives, there's concern at the FBI

16  about use of hard drives from outside sources and because of

17  viruses and other matters.

18      So I would just like to, yeah, for the record state

19  that.

20      THE COURT:  All right.  Well, Ms. Poletto, you should

21  follow through on it using the form of transmission suggested

22  by the government.  It's in everyone's --

23      MS. POLETTO:  Absolutely.

24      THE COURT:  -- best interests -- everyone's best

25  interests to get this done expeditiously.

1          MS. ABRAHAM:  That's not a problem.

2          THE COURT:  Also, there's a motion --

3          What was it, Sandy?

4          THE CLERK:  It was defendants' motion for relief from

5    standing order regarding mandatory initial discovery pilot

6    project.

7          THE COURT:  Oh, that's granted.  This is not that type

8    of case.

9          THE CLERK:  Okay.

10         THE COURT:  So that that motion for relief from the

11   mandatory disclosure requirements under our new standing order

12   on discovery is granted.

13         All right.  I don't think there's a need to come back

14   to court on this.  There is a need, obviously -- which I've

15   just stated -- for you to make monthly reports.

16         If either side feels that there's a need to come to

17   court to report on any snags in this process, just contact my

18   courtroom deputy, and we'll have you in for a quick status.

19         MS. ABRAHAM:  Yes, your Honor.

20         THE COURT:  All right.  Anything else from anyone,

21   government or plaintiff?

22         MS. ABRAHAM:  Nothing from the plaintiff, your Honor.

23   Thank you.

24         THE COURT:  Okay.  And anything else from the

25   government?

1          MS. SOWLES:  No.  I just was wondering whether your

2     order will be a written order or just from the transcript so in

3     case there's questions from the FBI as far as getting a full --

4     I mean, I made notes and have it, but I just was wondering.

5          THE COURT:  No.  It will likely be the oral

6     justifications I've just given, with a short minute order with

7     deadlines and dates.  But you can certainly order the

8     transcript if you want.

9          MS. SOWLES:  Okay.  Thank you, your Honor.

10         THE COURT:  All right.  Thank you all.

11         MS. BOUNDAOUI:  Thank you, your Honor.

12         MS. ABRAHAM:  Thank you, your Honor.

13         MS. POLETTO:  Thank you, your Honor.

14     (Concluded at 8:58 a.m.)

15                    C E R T I F I C A T E

16     I certify that the foregoing is a correct transcript of the

17     record of proceedings in the above-entitled matter.

18

19     /s/ LAURA R. RENKE                      September 30, 2017
       LAURA R. RENKE, CSR, RDR, CRR
20     Official Court Reporter

21

22

23

24

25